386 A.2d 71

**Maria L. HOEKE and Jonathan Hoeke, her husband,**

**v.**

**MERCY HOSPITAL OF PITTSBURGH, Pennsylvania, Dr. Leo R. Kairys, Dr. William J. Cushing and Dr. Charles E. Copeland.**

**Appeal of Dr. Leo R. KAIRYS and Dr. Charles E. Copeland.**

**Appeal of MERCY HOSPITAL.**

**Appeal of Dr. William J. CUSHING.**

Superior Court of Pennsylvania.

Submitted Nov. 10, 1976.

Decided April 28, 1978.

Janet N. Valentine, Pittsburgh, for appellants, at No. 598.

Charles H. Alpern, Pittsburgh, for appellant, at No. 614.

Robert J. Pfaff and Frederick N. Egler, Pittsburgh, for appellant, at No. 616.

Murray S. Love, and Sikov & Love, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

In the instant appeal the defendants below challenge the lower court's denial of their preliminary objections which questioned the validity of the court's jurisdiction over their persons. In particular defendant-appellants argue that the writ of summons in trespass and assumpsit which was served upon them did not comply with the provisions of Rule 1010 of the Pennsylvania Rules of Civil Procedure. For reasons which will later become apparent, sustaining their argument would be tantamount to terminating plaintiffs-appellees' cause of action in trespass. On the facts present in the instant case, that is a result we are not inclined to reach. Therefore, we will affirm the order of the lower court denying appellants' jurisdictional objection, albeit for reasons different from those which persuaded the court below.

■ In June of 1971 Mrs. Marie Hoeke entered Mercy Hospital in Pittsburgh for surgery. Allegedly as a result of such surgery Mrs. Hoeke suffered through an unfortunate recuperation which resulted in the amputation of her "lower right extremity" and removal of her right kidney. For these and related injuries she and her husband sought to hold Mercy Hospital and Drs. Kairys, Copeland and Cushing liable in both assumpsit and trespass. Consequently, on June 13, 1973, Mrs. Hoeke and her husband, through their counsel, filed a praecipe for a writ of summons in trespass and assumpsit. The record indicates that although the writ issued it was never claimed at the prothonotary's office by plaintiffs' counsel and delivered to the sheriff for service. Obviously the praecipe was only filed to toll the statute of limitations until such time as plaintiffs were prepared to proceed further with the suit, a common practice at that time which has since been prospectively abolished by our Supreme Court. See *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). Approximately one year later, on June 11, 1974, plaintiffs were prepared to proceed in earnest and filed the ordinarily appropriate praecipe to reissue the writ of summons, well within the time limit prescribed by *Zarlinsky v. Laudenslager,* 402 Pa. 290, 167 A.2d 317 (1961). It was at

this point that matters went awry because the original writ had been lost, misplaced or destroyed; in any event, the prothonotary's office could not locate it. When this has occurred the appropriate procedure for plaintiffs is to praecipe for the issuance of a substituted writ pursuant to Pa.R.C.P., Rule 1010(c). Instead, the writ clerk, who was a relative novice in the prothonotary's office drafted a new "original" writ rather than insisting that plaintiffs' counsel praecipe for a substituted writ. Her error became obvious when she improperly dated the writ "June 13, *1974*" rather than "June 13, *1973.*" This writ was then stamped "reissued" and served on defendants. Defendants' suspicions concerning the verity of the "reissued original" writ were subsequently confirmed when the employment records of the prothonotary established that the writ clerk, who prepared the purported "original" writ which was served, was not an employee in June, 1973. Hence, she could not possibly have prepared the original writ.

Soon after the writs were served counsel for the various defendants entered appearances. Counsel for Drs. Kairys and Copeland filed a demand for a jury trial contemporaneously with entering their appearances, and counsel for Mercy Hospital included its jury trial demand in the appearance form itself. The docket reflects no further action in the case until November, 1975 when Drs. Kairys, Copeland and Cushing filed praecipes ruling plaintiffs to file a complaint. It should be noted that more than two years had elapsed since the issuance of the original writ in June, 1973, so that, at least with respect to the cause of action in trespass, if defendants' argument is correct that the writ is defective, plaintiffs could not have cured the defect in service of the writ of June, 1974 and complied with *Zarlinsky v. Laudenslager,* supra. When plaintiffs' complaint was filed shortly thereafter, the four defendants filed their preliminary objections challenging *in personam* jurisdiction.

At the hearing on the objections plaintiffs argued, first, that defendants had waived the jurisdictional objection by entering appearances, demanding a jury trial, and filing a

praecipe to rule plaintiffs to file a complaint; and, second, that on the merits plaintiffs should prevail because the error in the "reissued" writ was both clerical and trivial of the type which fell within the intendment of Pa.R.C.P. 126. The hearing court agreed that defendants had waived the jurisdictional argument because of their action, but added that the court would have sustained the preliminary objections if it had been necessary to reach the merits.

In some respects this case is one of first, and one would hope last, impression in this Commonwealth. While we disagree, without overwhelming conviction, with the rationale of the court below, we do agree with its conclusion that appellants' preliminary objections were properly denied.

 With regard to the threshold question of waiver, we find the defendants took no action prior to their filing preliminary objections which precluded them from advancing their jurisdictional claim. First, it is indisputable that entering an appearance without more does not bar a party from questioning whether the court has jurisdiction over his person. Rule 1012 of the Pennsylvania Rules of Civil Procedure provides:

"A party may enter a written appearance which shall state an address within the Commonwealth at which papers may be served. Such appearance shall not constitute a waiver of the right to raise any defense including questions of jurisdiction or venue. . . ."

Plaintiffs more or less agree with this general rule, but argue that incorporating a demand for a jury trial in the appearance form as did Mercy Hospital, or filing a separate demand for a jury trial and an appearance simultaneously as did Drs. Kairys and Copeland, constitutes such additional action necessary to find a waiver of an *in personam* jurisdictional claim.[1] We disagree.

1. Counsel for Dr. Cushing did not demand a jury trial, presumably because it would have been redundant in light of the procedural posture of this case and the demands filed by his co-defendants. Hence, this argument would not bar his asserting his objection to jurisdiction over his person.

The landmark in Pennsylvania for guidance in determining whether and at which stage an objection to *in personam* jurisdiction has been waived is *Monaco v. Montgomery Cab Co.,* 417 Pa. 135, 208 A.2d 252 (1965). In an important footnote to the Court's opinion in that case the Court stated:

> "[S]ince preliminary objections have taken the place of 'de bene esse' appearances, and since the function of appearances under the Rules of Civil Procedure are not related to the right to file preliminary objections, and since the Rules provide a clear and expeditious method for eliciting and waiving jurisdictional objections it would seem that the doctrine of waiver by 'general appearance' no longer has a place in the law except as it may be incorporated into the Rules of Civil Procedure. In other words, a party should be deemed to have waived his 'jurisdictional' objections only when an application of the Rules of Civil Procedure would lead to such a result. In most, if not in all cases, the result of such application will not differ from the result of a correct application of the old doctrine of waiver by 'general appearance.' One instead of two sets of rules on waiver would considerably diminish the confusion in this area of the law, as exemplified in this case by the filing of a nonexistent form of appearance, i. e., 'de bene esse.' " 417 Pa. at 139, n. 1, 208 A.2d at 254.

Following *Monaco v. Montgomery Cab Co.,* to find a waiver of *in personam* jurisdiction the courts ordinarily have looked for "some other and further action *on the merits* " beyond the mere filing of an appearance by the party seeking not to be bound. See 1 Goodrich-Amram 2d § 1012:1 (1976). Exemplary of such "further action on the merits" are cases like *O'Barto v. Glossers Stores, Inc.,* 228 Pa.Super. 201, 324 A.2d 474 (1974). In that case this court had little difficulty finding a waiver of a jurisdictional objection when the third party defendant served interrogatories on the original plaintiff, filed an answer to the third party complaint, and sought to join another defendant before questioning the propriety of service. Similarly the courts have found waiver when there has been a demurrer prior to raising the jurisdictional

objection as in *Yentzer v. Taylor Wine Co.,* 409 Pa. 338, 186 A.2d 396 (1962), or, when the defendant takes the case to a master before challenging the court's power to adjudicate his rights vis a vis the plaintiff. *Hohlstein v. Hohlstein,* 223 Pa.Super. 348, 296 A.2d 886 (1972).

▮ The foregoing cases establish far stronger bases for finding waiver than do the facts in the instant case, and we find the differences to be fatal to this aspect of plaintiffs' waiver argument. There are no cases which we have found discussing the collateral consequences of a jury trial demand in an appearance form, but we are certain that if such cases existed they would hold such a demand to be inconsequential with respect to any jurisdictional defect. It can hardly be maintained that defendants' early indication of their intention to exercise their constitutional right to a trial by jury constitutes action on the merits of the controversy—it is a demand which admits of no rebuttal by plaintiffs. Although it may be said that such a demand is in a sense logically inconsistent with defendants' position that the court has no jurisdiction over them, it is equally inconsistent with any claim for relief or judicial disposition of the controversy short of trial. In other words, plaintiffs could with equal logical force argue that this comparatively innocuous demand at the commencement of litigation disables defendants from filing preliminary objections on a variety of bases, or even seeking judgment on the pleadings. But logic is not always the measure of procedural propriety; more often expedition is. See 2 Goodrich-Amram § 1017(b):1 at pp. 25–26 (1976). To the extent that a demand for a jury trial coupled with an appearance is not premature and effectively preserves defendants' right to a jury trial, we find that it cannot operate to the detriment of any arguments defendants might otherwise raise subsequently by preliminary objections; to the extent such a demand is premature, we find it harmless surplusage.

▮ Plaintiffs also argue that defendants waived their right to challenge jurisdiction over their persons by ruling plaintiffs to file a complaint pursuant to Pa.R.C.P., Rule

1037. The essence of plaintiffs' argument is that a 1974 amendment to Rule 1017 of the Pennsylvania Rules of Civil Procedure altered prior practice by requiring defendants to challenge the validity of service of a writ of summons by raising the question before a complaint is filed or, at least, before they demand that a complaint be filed. We disagree.

At first blush this issue appears easily resolved in light of *Keller v. LeBarre,* 225 Pa.Super. 504, 311 A.2d 683 (1973). In that case we held that a defendant did not waive his right to challenge personal jurisdiction by ruling the plaintiff to file a complaint. The rationale of our decision in *Keller* was that a writ of summons was not a pleading so that it was not immediately susceptible to attack by preliminary objections. Furthermore, the rules require all preliminary objections to be raised at the same time,[2] and most objections cannot be raised until a complaint is filed.[3] Hence, in order to effectuate the purpose of preliminary objections in telescoping the various so-called dilatory objections into one step, objections to the validity of service of process should abide the plaintiff's filing his complaint. Obviously, this procedure poses no problem when the action initiates with a complaint, but when a writ of summons originates the suit, a defendant might otherwise find himself in a dilemma. Failure in advancing the suit seasonably could redound to his detriment strategically,[4] while advancing the action by filing a praecipe for a complaint might otherwise be construed as a "general appearance" waiving a personal jurisdictional objection. *Id.* But see *Immitt v. Vocabet,* 56 Lanc.L.Rev. 353 (Pa.C.P. 1959). Thus, our decision in *Keller v. LeBarre,* supra, sought to resolve this dilemma by establishing that, under the rules as they were then drafted, ruling the plaintiff to file a complaint would not constitute a waiver of any personal jurisdiction objection. In *Keller* we indicated that although a note to Rule 1017 implied that preliminary objec-

2. Pa.R.C.P., Rule 1028(b).

3. *Monaco v. Montgomery Cab Co.,* 417 Pa. 135, 208 A.2d 252 (1965).

4. See, e. g., 2 Goodrich-Amram 2d § 1013(b):5 (1976).

tions might be raised prior to the plaintiff's serving his complaint, it could not amend the language of the rule itself.

Perhaps we should have also indicated that the note to Rule 1017 could not survive the teeth of Rule 1028(b), because *Keller's* wake bore a most unexpected undertow of reaction. Goodrich-Amram's second edition of Standard Pennsylvania Practice charged that unless the Supreme Court reversed *Keller*,[5] the decision would resurrect the procrustean practice of petitions to strike service and the like. 2 Goodrich-Amram 2d § 1017(b):1 (1976). The author tells us that the procedural rules committee busily worked at amending Rule 1017 to make it clear that preliminary objections were available for "attacking the form or service of a writ of summons. . . ." However, with all due respect to the commentators and the procedural rules committee, this criticism and amendment miss the point; fortunately, we think. This is so because a defendant's praecipe for complaint will expedite any attack the defendant wishes to make either on the writ or on the complaint.

In *Keller* this court never questioned that preliminary objections were the proper method of challenging an impropriety in the writ of summons or its service, the question was *when* the issue must be raised by defendants—before the complaint was filed, or afterwards. In that regard the rules committee misapprehended the point by clarifying Rule 1017; the real "problem" arises under Rule 1028 which forbids fragmenting preliminary objections in the manner which the commentary discussed above suggests. More importantly, indeed ironically, if the commentators are correct about the intention of the rules committee, they, not we, would be setting practice back some fifty years. See 2 Goodrich-Amram 2d § 1017(b):1 at pp. 25–26 (1976). Since rulings on *in personam* jurisdiction and venue are immediately appealable, the change in the rules which, assuming Goodrich-Amram 2d is accurate, the rules the committee wishes to effectuate will lead to cases going twice through the appellate machinery of this Commonwealth before an-

5. The Supreme Court refused allocatur.

swers to complaints have been filed. An appeal from a jurisdictional ruling will arise before the complaint is filed; an appeal from a venue ruling will arise after the complaint is filed. See *Monaco v. Montgomery Cab Co.,* supra. Obviously this is a prodigal use of the judicial time and resources of this Commonwealth, as well as a vexatious procedure from the plaintiff's standpoint. It is for this reason that we are not going to adopt this practice unless the rules of procedure explicitly condone it, which we think the rules should not. As *Monaco* implied, as *Keller* and the instant case make clear, and as the rules of procedure currently read, defendants may not challenge a defect in a writ of summons or its service until a complaint is filed. That being the case, a praecipe for a rule to file a complaint cannot be construed as waiving any objection to *in personam* jurisdiction. Therefore, the validity of service of the writ of summons in the instant case is properly preserved for our review, as it was for the court below.

■ Having now reached the merits of the instant controversy, as the defendants have urged, we nevertheless find that their preliminary objections should be overruled. Recalling the facts of the case, the prothonotary's office improperly reissued a writ as an original when in point of fact it was a substituted writ. Under Pa.R.C.P., Rule 1010(c), a substituted writ may only issue when plaintiff files a praecipe for a substituted writ, averring that the original writ has been lost or destroyed. In the case at bar the prothonotary issued a substituted writ merely on a praecipe to reissue the original writ. The consequences of this error were that defendants were served a writ bearing a falsified issue date and stamped on the back "WRIT REISSUED" instead of "SUBSTITUTE WRIT REISSUED." In all other respects the writ served was identical to the writ which should have been served pursuant to a praecipe to reissue a substituted writ. With respect to notice, which is all a writ is intended to provide, defendants were not discernibly prejudiced.

Defendants imply, however, that they are entitled to an irrebuttable presumption of prejudice because proper prae-

cipes are the talismen of proper service. In support of their position they refer us to cases like *Sharp v. Valley Forge Medical Center,* 422 Pa. 124, 221 A.2d 185 (1966) wherein our Supreme Court stated:

> "The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made." *Id.,* 422 Pa. at 127, 221 A.2d at 187.

We, of course, agree that the rules relating to service of process are important, notice being a constitutional touchstone for the power of the courts to act. However, we do not agree that every aspect of service is equally critical, so that any defect in process is necessarily mortal. Compare, e. g., *Peterson v. Philadelphia Suburban Transp. Co.,* 435 Pa. 232, 255 A.2d 577 (1969). In the instant case, admittedly, plaintiffs filed the wrong praecipe, the immediate consequence of which was the issuance of a technically defective writ. Had plaintiffs complied with Rule 1010 the instant controversy would not have arisen. On the other hand, if we sustain defendants' objections to service, plaintiffs will be out of court on their trespass action because the two-year statute of limitations and *Zarlinsky v. Laudenslager,* supra, will operate as a bar. In our view, on the facts of the instant case, we cannot permit this to occur. Rule 126 of the Pennsylvania Rules of Civil Procedure requires that we abjure such a rigid application of procedural rules by providing:

> "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." [6]

We find it impossible to conclude that the defect in service in the instant case affected any substantial rights of the

---

**6.** We note in passing, with respect to the "speedy and inexpensive determination of every action," Rule 126 applies with similar force to plaintiff's waiver argument under Rules 1017 and 1028, supra.

defendants. Although plaintiffs are culpable for the mistake which occurred, it would be unjust to sanction the result which sustaining defendants' preliminary objections would entail.

For the foregoing reasons, the order of the court below is affirmed.

JACOBS, P. J., and HOFFMAN, VAN der VOORT and SPAETH, JJ., concur in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.