**Maroney v. T.J. Lipton Co.**

C.P. of Allegheny County, no. GD 94-15550.

*Glenn D. Dolfi,* for plaintiff.
*Brian S. Kane,* for defendants T.J. Lipton Co. and Jeff Paczan.

FRIEDMAN, *J.,* August 14, 1996—

## INTRODUCTION

The issue presented in this motion for summary judgment is whether, under the case law established by *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976), plaintiff's actions in filing and attempting to serve original process have tolled the statute of limitations. Good faith *attempts* at service will usually be found where defendant had actual *notice* of the complaint. Such a result is less clear when defendant's *insurer* is the party with *actual* notice, although it seems that the law of agency would impute the *actual notice* of defendant's agent of a claim to defendant itself, even though *service* of original *process* can only be upon defendant, the principal.

Prior to *Lamp v. Heyman* a plaintiff could effectively double the applicable statute of limitations by the timely

*filing* of a writ of summons and could also deliberately fail to serve the writ without suffering any consequences so long as it was regularly reissued and eventually served. In *Lamp,* the Supreme Court put an end to the impunity with which plaintiffs had engaged in such conduct. Even then, the conduct was apparently so much a part of the legal community's culture that the rule in *Lamp* was issued prospectively only. During the 20 years since *Lamp,* the Supreme Court has revisited the issue in depth on only one other occasion, in *Farinacci v. Beaver County Industrial Development Authority,* 510 Pa. 589, 511 A.2d 757 (1986). In *Lamp,* the Supreme Court emphasized the need that a plaintiff not "stall in its tracks the legal machinery he has just set in motion." In *Farinacci,* that requirement was restated and clarified to emphasize the need that a plaintiff act in *good faith* in attempting service. The Superior Court and, to a lesser extent, the Commonwealth Court have supplied the remaining appellate guidance on what conduct constitutes good faith and on what conduct does or does not serve to "stall" the progress of plaintiff's action (by concealing from a defendant the fact of the filing of plaintiff's action). The cases often have subtle factual differences which compel different results. One case, *Leidich, infra,* strongly suggests that even defendants and their agents and insurers also have a duty of good faith when seeking the benefit of the *Lamp* holding, and may not negotiate with a plaintiff to settle a claim, knowing that plaintiff believes, incorrectly, that service of original process was made, only to stop negotiations once the original statute of limitations has run and then raise the bar of the statute of limitations.

The instant defendants want this court to rule that *Lamp* and its progeny call for the elimination of the good faith standard and hold plaintiff to an absolute

requirement that original process be served within the first period of issuance, regardless of defendant's notice of the claim, regardless of defendant's agent having a copy of the complaint, regardless of plaintiff's having done everything reasonable in a timely fashion, regardless of the mistake which prevented timely service having been the prothonotary's and not the plaintiff's, and regardless of plaintiff's having caught the mistake during the only week of the year when the courts and attorneys' practices in this county slow down to a slow gallop. However, after an extensive and possibly exhaustive review of the appellate cases, we conclude that plaintiff did not violate *Lamp* and its progeny, and that the statute of limitations was therefore tolled when the writ was filed. Defendants T.J. Lipton Company's and Jeff Paczan's motion for summary judgment based on the bar of the statute of limitations must be denied.

## FACTS

The material facts of this case are as follows:

Plaintiff was injured on November 4, 1992.

On September 16, 1994 plaintiff's counsel mailed a complaint, a check for the filing fee of $63.50, and a self-addressed, stamped envelope to the prothonotary. These were accompanied by a cover letter (exhibit C to the motion for summary judgment) requesting that, after filing, the complaint and writ be returned to plaintiff's counsel in the envelope.

According to deposition testimony of the supervisor of the department of general docket cases in the Allegheny County Prothonotary, it is one of the usual practices in Allegheny County for an attorney to file a complaint or praecipe for writ of summons by mail

and to request that the prothonotary return the writ to the attorney by mail, in an enclosed self-addressed, stamped envelope. (Deposition of Don Siulborski, p. 11, exhibit 4 to plaintiff's brief in response.)

The other method for an attorney to commence an action is to file the complaint or praecipe in person and for the attorney or his representative to pick up the writ in person. (Siulborski deposition p. 11.)

It is not local practice in Allegheny County for the prothonotary to deliver an issued writ and instructions to the sheriff. (Siulborski deposition p. 10.) (There is no suggestion that plaintiff's counsel made such a request.)

Plaintiff's attorney states that he was subsequently notified by the prothonotary's office that an additional check in the amount of $6.75 was required. (Plaintiff's brief in opposition to summary judgment.)

The additional amount represented "a statewide sheriff fee" which was implemented "with regards to a bill signed by Governor Casey a few months ago." (Siulborski deposition p. 15.)

On September 21, 1994 plaintiff's counsel forwarded a check for the $6.75 to the prothonotary, along with a cover letter. A copy of the letter and check is incorporated as "Deposition exhibit 3" to the deposition of Suzanne Dolfi, which is exhibit 3 to plaintiff's brief in response to motion for summary judgment. The September 21 letter does not reiterate the original request, still in the prothonotary's office, that the writ be returned to plaintiff's counsel.

A copy of what purports to be a page from the prothonotary's "writ book" shows that the writ was issued on September 23, 1994. (Exhibit E to motion for summary judgment.)

The prothonotary mistakenly did not return the writ to plaintiff's attorney as instructed.

The person in plaintiff's attorney's office who would normally have noticed the prothonotary's mistake more quickly had become ill and was not at work for a prolonged period, including the time during which the writ should have been received from the prothonotary.

Plaintiff's counsel states in his affidavit that

"Upon returning to my office following the Christmas holiday, on or about December 27, 1994, I conducted a review of my files and became aware that we had not received the writ in the above-captioned case from the prothonotary. The Allegheny County Prothonotary was immediately contacted and it was found to be in the prothonotary's office, having failed to be sent back to my office as instructed."

Plaintiff's counsel reinstated the complaint on December 27, 1994. Cover letters and receipts for certified mail, showing that the complaint was mailed to defendants Lipton and Paczan on December 27, 1994, are attached as deposition exhibits 4 and 5 to the Suzanne Dolfi deposition.

The periods from early September to mid-October and from early November to mid-December every year are customarily very busy trial terms, with a two-week interval in late October for equity trials or, more recently, non-jury trials of small cases, and are therefore periods during which the court, the prothonotary, and attorneys are exceptionally busy and under stress.

## DISCUSSION

The current law in Pennsylvania regarding when an attempt to serve original process is sufficient to toll the statute of limitations was set forth in 1976, in the

48

leading case of *Lamp v. Heyman, supra.* In *Lamp,* the Pennsylvania Supreme Court decided that when a plaintiff causes a writ to be reissued repeatedly beyond the expiration of the statute of limitations, but also gives instructions to the prothonotary not to deliver the writ to the sheriff for service, the statute of limitations will not be tolled, despite the language of Pa.R.C.P. 1010, now superseded by Pa.R.C.P. 401, which provides in pertinent part as follows:

"(2) A writ may be reissued or a complaint reinstated at any time and any number of times. A new party defendant may be named in a reissued writ or a reinstated complaint. . . .

"(4) A reissued, reinstated or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule or by Rule 404 after reissuance, reinstatement or substitution."

The Supreme Court set forth the then-new standard, to be effective prospectively only, as follows:

"Accordingly, pursuant to our supervisory power over Pennsylvania courts, we rule that henceforth, *i.e.,* in actions instituted subsequent to the date of this decision, a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion. Since the manner in which writs of summons are to be prepared and delivered to the sheriff for service is not covered by our rules and since there are differences among the judicial districts of Pennsylvania in the procedures followed in these matters, a plaintiff should comply with local practice as to the delivery of the writ to the sheriff for service. If under local practice it is the prothonotary who both prepares the writ and delivers it to the sheriff, the plaintiff shall have done all that is required of him

when he files the praecipe for the writ; the commencement of the action shall not be affected by the failure of the writ to reach the sheriff's office where the plaintiff is not responsible for that failure. Otherwise, the plaintiff shall be responsible for prompt delivery of the writ to the sheriff for service." *Lamp, supra* at 478, 366 A.2d at 889. (footnote omitted) (emphasis added)

Starting with *Lamp,* therefore, the standard for determining whether the statute of limitations is tolled by filing original process was whether "the plaintiff then *refrains from a course of conduct* which serves to stall in its tracks the legal machinery he has just set in motion." *Id.* (emphasis added)

The Supreme Court did not revisit the *Lamp* case, except in passing, until 1986, with its decision in *Farinacci, supra.* In *Farinacci,* the four-justice majority amplified its explanation of the standard in *Lamp* requiring that plaintiffs refrain from stalling the legal machinery and placed the emphasis on whether or not the plaintiff made "a good faith effort to effectuate notice" of the action. *Farinacci, supra* at 594, 511 A.2d at 759. The "good faith" standard is derived from the following language in the *Lamp* case: "Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Lamp, supra.* The majority in *Farinacci* also stated that evidentiary determinations are required in order to make that determination. They evaluated the factual scenario of *Farinacci* and concluded that plaintiff's counsel there had not met the "good faith" standard:

"Based on [plaintiffs'] affidavit, the court of common pleas found that eight or nine days of the delay was

attributable to counsel's simply misplacing the file. Such is not necessarily inconsistent with a finding of good faith. The remaining four weeks' delay is attributable only to counsel's faulty memory. As plaintiffs have failed to provide an explanation for counsel's inadvertence which could substantiate a finding that plaintiffs made a good-faith effort to effectuate service of the writ, we are constrained to hold that the order of the court of common pleas granting defendants' preliminary objections and dismissing plaintiffs' action was not an abuse of discretion, and was therefore proper." *Id.* at 594-95, 511 A.2d at 759-60.

The three-justice minority in *Farinacci,* on the other hand, took issue with the majority's emphasis on whether or not plaintiff acted in good faith. They instead argued that the proper test should be "whether the plaintiff 'unreasonably delayed the prosecution of her action and [whether the] appellees were prejudiced thereby.' " *Id.* at 595, 511 A.2d at 760. This language, also taken from the *Lamp* case, places more emphasis on whether the defendant suffered any prejudice as a result of the delay in service. The minority noted that the defendant in *Farinacci* was not prejudiced by the delay in effectuating service, since it was aware of plaintiff's claim within one year prior to the commencement of the action.

*Farinacci* is the Supreme Court's most recent pronouncement on whether an attempt to serve original process is sufficient to toll the statute of limitations. However, since then, both the Superior and Commonwealth Courts have addressed that issue, with outcomes that are explained by sometimes subtle factual distinctions. What follows is a chronological review of the Superior Court and Commonwealth Court cases dealing with this area of the law since *Farinacci.*

The first Superior Court case decided after *Farinacci* was *Gould v. Nazareth Hospital,* 354 Pa. Super. 248, 511 A.2d 855 (1986). In *Gould,* the statute of limitations was found to have been tolled because the failure to attempt service within the life of the writ was the sheriff's fault. There was no allegation that the plaintiff prevented service from being attempted.

In *Ritter v. Theodore Pendergrass Teddy Bear Productions Inc.,* 356 Pa. Super. 422, 514 A.2d 930 (1986), although no effort was made to serve the writ of summons upon the defendant, the subsequently filed complaint, properly and timely served, was effective to commence the action.

Next, and providing a more detailed discussion of the *Lamp* issues, was *Feher by Feher v. Altman,* 357 Pa. Super. 50, 515 A.2d 317 (1986). In *Feher,* the statute of limitations expired on October 7, 1983. The fact situation was described by the Superior Court as follows:

"On October 5, 1983, [plaintiffs] filed a praecipe for a writ of summons. The trial court's opinion, dated August 30, 1985, states that '[p]laintiffs' counsel concedes that no instructions were ever given to the sheriff regarding service of the writ which was allowed to expire without delivery.' In addition, the record reflects that the sheriff's fee for service of the writ was never paid.

"The original writ expired on November 4, 1983 without any effort having been made to have it served. On November 30, 1983, the writ was reissued, a complaint was filed, and the two documents were subsequently taken to the sheriff. The sheriff's fee was paid, instructions . . . were given, and the sheriff served the reissued writ and complaint on December 5, 1983." *Id.* at 52, 515 A.2d at 318. (footnote omitted)

The Superior Court held that plaintiffs' actions were not sufficient to toll the statute of limitations. It stated that "[a]t a minimum, the good faith effort required in *Lamp v. Heyman* . . . mandates compliance with the Pennsylvania Rules of Procedure, and, importantly, local practice." *Id.* at 54, 515 A.2d at 319. The court emphasized that plaintiffs' counsel did not present any evidence by way of affidavit or deposition that he took some affirmative action to provide defendants with notice of the suit. In fact, plaintiffs' counsel "conceded at oral argument that the reason for not taking steps to have the original writ served was to avoid the additional expense incurred by having the writ served and then at a later time having the complaint served." *Id.* at 56, 515 A.2d at 320.

We now turn to *Sherry v. Trexler-Haines Gas Inc.*, 373 Pa. Super. 330, 541 A.2d 341 (1988). This case is discussed only because of our hope to cover all the appellate court decisions since *Farinacci.* It involves one defendant's attempt to join another party as an additional defendant, and seems to be an aberration among the many cases which invoke *Lamp.* The plaintiff in *Sherry* instituted its suit on September 22, 1983. Defendant filed its answer and new matter on October 26, 1983 and filed its complaint to join additional defendants on November 10, 1983. On February 26, 1984, the sheriff returned the complaint to join marked "not found." Defendant did not file a praecipe to reissue the complaint until May 28, *1986.* Service of the complaint to join was made on June 20, 1986. The additional defendant filed preliminary objections based on the issue of *untimely joinder,* and the trial court dismissed the complaint to join based on *untimely service.* The Su-

perior Court held that the trial court improperly raised the issue of defects in service sua sponte, holding that defendant's failure to raise them constituted a waiver. Despite its conclusion that service defects were waived, the Superior Court also expressly held that the trial court should have applied Pa.R.C.P. 425 to the additional defendants, which became effective on January 1, 1986. That rule provides that original process shall be served on an additional defendant in the same manner as on an original defendant. Based upon the rule governing service of original process, Pa.R.C.P. 401, which provides that "[a] writ may be reissued or a complaint reinstated at any time and any number of times," the Superior Court held that defendant properly served additional defendant. In his strong dissent, however, Judge Montemuro insisted that former Pa.R.C.P. 2254(b) applied, giving the original defendant only 30 days in which to effect service on the additional defendant, with extra time only being available by leave of court. The dissent would also have applied *Lamp's* principles to defendant's "nearly two year bout of inertia" with regard to service of the complaint to join. *Id.* at 340, 541 A.2d at 346.

In *Gutman v. Giordano,* 384 Pa. Super. 78, 557 A.2d 782 (1989), it was held that plaintiff took sufficient action where he directed that service be made upon defendant at her part-time place of employment rather than her residence. (Plaintiff was aware of where defendant resided because it was a property which plaintiff had sold to her.) The writ was reissued several times, so that when service was eventually made, it was beyond the statute of limitations. The Superior Court stated that this course of action did not "[represent] a lack

of good faith effort to notify [defendant] that she had been sued. This is not a case where there was a failure to deliver the writ to the sheriff for service."

We next review *Leidich v. Franklin,* 394 Pa. Super. 302, 575 A.2d 914 (1990). In this important case (which deals with the unstated issue of a *defendant's bad faith* attempt to reap a benefit under *Lamp* when it had *actual notice* of plaintiff's claim) the majority of the Superior Court panel concluded that the plaintiff acted properly under the strictures of the *Lamp* case, and that the trial court improperly granted summary judgment in favor of the defendant. The case arose out of an accident which took place on April 4, 1986. The Superior Court summarized the facts as follows:

"On January 4, 1988, the plaintiff filed a praecipe for the issuance of a writ of summons with the prothonotary of Dauphin County. Payment for the issuance of the writ was made, but on the back of the writ was written: 'writ to atty. 1/4/87 RB.' [The 1987 date was an error and the writ was actually given to the attorney in 1988.] Next in the record is a certificate of service, prepared by an employee for the plaintiff's attorney, indicating that a copy of the writ was served upon the defendants by first class mail dated January 5, 1988. This was not disputed by the defendants. . . .

"Also, on January 5, 1988, the defendants were served with a notice to appear for deposition on February 2, 1988. Counsel for the defendants, on or about March 3, 1988, objected to the deposition 'referencing the writ of summons, at which point it was agreed to postpone said deposition indefinitely.' . . .

"Nonetheless, from March 15 through April 4, 1988, documentation (which included the plaintiff's medical bills) was submitted to the defendants' insurer 'with

regard to a possible settlement of the claim on a "policy limits" basis.' . . .

"It was not until after April 4, 1988, that the plaintiff learned that settlement would not occur. Rather, the case was being contested 'on technical grounds involving alleged deficiencies in the service of the writ of summons.' . . .

"After the passage of the two-year period of limitations, the plaintiff filed a praecipe on May 17, 1988, seeking the reissuance of the writ. This occurred and the sheriff served the writ on the defendants the same date. The plaintiff, with the issuance of a rule to do so, filed a complaint. This was followed by the defendants filing an answer with new matter alleging . . . that the plaintiff's claim was barred by the statute of limitations and the principles enunciated in *Lamp v. Heyman* . . . ." *Leidich, supra* at 304-305, 575 A.2d at 915. (citations omitted)

Judge Popovich, writing for the majority, reviewed the *Lamp* case, as well as *Feher* and *Farinacci,* discussed above, and the Commonwealth Court's case of *Big Beaver Falls Area School District v. Big Beaver Falls Area Educational Association,* 89 Pa. Commw. 176, 492 A.2d 87 (1985), which predated *Farinacci* and is therefore not discussed herein. Judge Popovich concluded that the current state of the law was that "good faith" was to be assessed on a case-by-case basis, that "the thrust of all inquiry is one of whether a plaintiff engaged in a 'course of conduct' forestalling the legal machinery put in motion by his/her filings," and that courts should not apply the "good faith" rule in a mechanical way which does not allow for explanations of unintended deviations from the "notice" requirement. *Leidich, supra* at 311, 575 A.2d at 918. In addition, although plaintiff's counsel in *Leidich* admitted that he did not follow

ordinary local practice in Dauphin County (which was to allow the prothonotary to deliver the writ to the sheriff for service, which is done automatically, without the requirement of instructions or prepayment on the part of the plaintiff), he instead attempted to effect service by first class mail. However, the Superior Court found that "the defect in service has not affected any substantial rights of the defendants, nor is there any allegation that the defendants were prejudiced by the manner in which they received notice of the lawsuit." *Id.* at 313, 575 A.2d at 919. The Superior Court observed that defendants had begun to communicate with their insurance carrier, and that discovery was underway. The court therefore did not give *defendants* the benefit of what was essentially *bad faith* conduct on their part (lulling plaintiff into believing it considered itself properly served and continuing settlement activities until after the period of limitations had expired).

The accident at issue in the next case in time, *Rosenberg v. Nicholson,* 408 Pa. Super. 502, 597 A.2d 145 (1991) took place on March 2, 1987. On February 2, 1989, plaintiff filed suit. Plaintiff tried to serve defendant on February 9, 1989 but was unsuccessful because he gave the sheriff an incorrect street address (132 Butler Pike rather than 932 Butler Pike). Plaintiff got the correct address and attempted service on March 31, 1989, but the sheriff returned service as not found "because appellee moved and 'now lives in the Germantown section of Philadelphia.' " *Id.* at 504, 597 A.2d at 145. By letter dated May 25, 1989, plaintiff's counsel requested defendant's address from the postmaster. The photocopy of the request shows that plaintiff's counsel stated, correctly, that defendant's last known address was *932* Butler Pike, and also shows a notation, "good as ad-

dressed." However, on July 14, 1989 and August 31, 1989, plaintiff attempted to serve defendant again at the address now *known* to be *incorrect, 132* Butler Pike.

The Superior Court in *Rosenberg* affirmed the trial court's finding that plaintiff's actions were insufficient to toll the statute of limitations. "By receiving appellee's correct address from the post office and still attempting to serve appellee at the incorrect address, appellant's behavior would appear to be inexcusable under the *Lamp* standard." *Id.* at 508, 597 A.2d at 147. The *Rosenberg* court discussed the *Leidich* case, *supra,* and distinguished *Rosenberg* from *Leidich* because in *Leidich* the defendant had actual notice of the suit, in spite of the defect in service. In *Rosenberg,* the defendant *"did not receive actual* notice of the lawsuit and, therefore, would have been prejudiced if appellant was allowed to commence the action after the statute of limitations had expired." *Id.* at 509, 597 A.2d 148. (emphasis added) The *Rosenberg* court also held that neglect and mistake are sufficient to create a *Lamp* violation where there is no *actual* notice of the claim. Intentional bad faith conduct is not necessary where the negligence of counsel approaches incompetence or indifference.

"Appellant also maintains its efforts to serve appellee were not in bad faith. However, it is not necessary the plaintiff's conduct be such that it constitutes some bad faith act or overt attempt to delay before the rule of *Lamp* will apply. . . . Simple neglect and mistake to fulfill the responsibility to see that requirements for service are carried out may be sufficient to bring the rule in *Lamp* to bear. . . . *Thus, conduct that is unintentional that works to delay the defendant's [actual]*

*notice of the action may constitute a lack of good faith* on the part of the plaintiff." *Id.* at 509-510, 597 A.2d at 148. (emphasis added) (citations omitted)

In *Sanders v. State Farm Mutual Automobile Ins. Co.,* 424 Pa. Super. 372, 622 A.2d 966 (1993) it was held that it was error to grant summary judgment in favor of the defendant based on *Lamp* where plaintiff paid the prothonotary the filing fee and the sheriff's service fee, and gave a copy of the complaint to the prothonotary to deliver to the sheriff for service, *in accord with normal practice* in Philadelphia, but the sheriff never effected service. The *Sanders* court found that *plaintiff* did not act improperly *as a matter of law.* There were still factual issues as to who was responsible for the failure to effect service, so summary judgment was not appropriate.

Our next case is *Green v. Vinglas,* 431 Pa. Super. 58, 635 A.2d 1070 (1993). It arose in Blair County, where local practice is to advance the costs of service to the sheriff when service must be made outside the county. The plaintiff in *Green* did not do so because, she says, she did not realize that defendants were located outside the county. Plaintiff says that no one from the sheriff or prothonotary notified her that the fees were required. She argued that this was "a clerical error beyond her control" and that her action should therefore not be barred by the *Lamp* rule. The Superior Court disagreed, stating that based on these facts she "did not meet her burden of good faith," and also observing that defendants were not notified of the action until seven months after the statute of limitations had expired. The defendant appears to have had no *actual* notice of the plaintiff's claim.

In *Ferrara v. Hoover,* 431 Pa. Super. 407, 636 A.2d 1151 (1994), plaintiff filed his original praecipe for

writ of summons within the statute of limitations. He complied with the local practice of Blair County by paying the service fee. However, the writ was not served before the statute of limitations expired. Plaintiff argued that his suit should nevertheless not be barred because either the sheriff or the prothonotary made the error in failing to serve the writ, and because defendants' insurance carrier was aware of the accident and had made a settlement offer. The Superior Court did not apply its holding in *Leidich* despite defendant's *actual* notice of the claim, stating "[plaintiff's] inacti[vity] from January 14, 1992, when the writ of summons was issued, until June 25, 1992, when appellant discovered the writ was never served, is fatal to [plaintiff's] case. . . . We find [plaintiff's] actions in this case neglectful and unreasonable, and clearly within the prohibition of *Lamp* and its progeny, despite that his actions did not constitute bad faith." *Ferrara, supra* at 411, 636 A.2d at 1152-53. (emphasis in original) (citations omitted)

The Superior Court here holds that even with actual notice and settlement discussions as in *Leidich,* it is not enough for a plaintiff to comply with local practice and then to rely on the sheriff or prothonotary to fulfill their responsibilities to effectuate service. Plaintiff must also check on them within a reasonable time (apparently now less than the six-month interval of *Ferrara)* to make sure they have done what they were supposed to do.

The accident giving rise to *Schriver v. Mazziotti,* 432 Pa. Super. 276, 638 A.2d 224 (1994), took place on March 14, 1989. On June 18, 1990, plaintiff's attorney sent a letter to defendant stating that he had been retained by plaintiff regarding the accident. Settlement attempts were made by plaintiff's attorney and defendant's in-

surance company during 1990. On January 23, 1991, plaintiff's counsel sent a letter to the insurance company advising them that he would be commencing litigation, and enclosed a courtesy copy of the complaint. On January 24, 1991, the complaint was filed and the filing and sheriff's fees were enclosed, but not the sheriff's instruction card required by local practice. The evidence showed that after the sheriff's office received the complaint without the instruction form, a sheriff's representative sent a letter to plaintiff's attorney along with a blank instruction form, on January 29, 1991. However, it was almost two months before the sheriff received the completed card, on March 21, 1991. The original statute of limitations had expired on March 14, 1991.

In ruling that plaintiff's conduct regarding service of original process did not extend the period of limitations, the Superior Court stated that the trial court properly concluded that plaintiff "had failed to comply with local procedural rules and therefore had not made a *good faith* effort to effect service." *Id.* at 281, 638 A.2d at 226. (emphasis added) The court rejected plaintiff's argument that defendant did not suffer any prejudice because of the correspondence that took place with her insurance company. Plaintiff cited *Leidich* and *Hoeke v. Mercy Hosp. of Pittsburgh,* 254 Pa. Super. 520, 386 A.2d 71 (1978), a pre-*Farinacci* case. The Superior Court stated that there was a distinction between informal notice to a *party* and informal notice to the *insurance company.* It also concluded that the failure to follow local rules "overrode" the informal notice of the impending suit that had been sent only to defendant's insurer. There is a dissenting opinion in the *Schriver* case, which in essence states that there was a good faith attempt at service, that the defect in service

did not affect defendant's substantial rights, and that "the lethargic presentation of the appropriate form to the sheriff, in light of all the other steps completed by counsel for [plaintiff], does not demonstrate 'a course of conduct which serve[d] to stall in its tracks the legal machinery he has just set in motion.' " *Id.* at 285, 638 A.2d at 228. It seems that the *Rosenberg* court's unstated suggestion that incompetence or indifference can reach a bad faith level is what really drives the *Schriver* holding.

Next in time is *Cahill v. Schults,* 434 Pa. Super. 332, 643 A.2d 121 (1994). A complaint was filed prior to the running of the statute of limitations and a copy of the complaint was also sent to the insurance carrier. Plaintiff's attorney gave the prothonotary an order for sheriff's service along with the complaint but did not attach a check for the sheriff's fee, which should have been done according to local practice. When he realized that he had not received a bill or telephone call from the sheriff's office, plaintiff's attorney reinstated the complaint, but by that time the statute of limitations had expired.

The Superior Court concluded that plaintiff did not comply with *Lamp.* It relied on *Green v. Vinglas, supra,* where the plaintiff also failed to pay the sheriff's fee. It concluded here that although plaintiff's counsel "did not intentionally neglect his duties in regard to the service requirements[,] . . . Pennsylvania appellate courts that have found non-compliance with *Lamp* have done so even where attorneys have not met their burden of good faith due to mere mistake or inadvertence." *Cahill, supra* at 339, 643 A.2d at 124. The Superior Court also rejected plaintiff's argument that mailing a complaint to the insurance company was enough to fulfill *Lamp,* apparently because the purported service

on defendant's insurer was by mail rather than by the sheriff. This secondary holding is different from that in *Schriver*, discussed above, in which the court used the rationale that informal service on an insurance company is not the same as informal service on a party, and, of course, vastly different from *Leidich*, where plaintiff's dealings with defendant's insurer were given the status of dealings with defendant.

The most recent Superior Court case interpreting *Lamp* and *Farinacci* seems to be *Bigansky v. Thomas Jefferson University Hospital*, 442 Pa. Super. 69, 658 A.2d 423 (1995). Plaintiff filed her praecipe for writ of summons four days before the statute of limitations ran out. She unsuccessfully attempted to serve the writ within 30 days after its issuance on May 7, 1990. On June 15, 1990 she was notified that her first attempt at service was unsuccessful, but she did not have the writ reissued until April 24, 1992. The Superior Court held that although the plaintiff's failure to successfully serve the writ within the 30-day period may have been the result of neglect or mistake, it was not possible to overcome the 22-month gap during which plaintiff did nothing. Again, this meets the *Rosenberg* suggestion that incompetence or indifference can rise to a bad faith level for purposes of *Lamp* and *Farinacci*.

There are also two relevant Commonwealth Court cases which have been decided subsequent to *Farinacci*. The first of these is *Williams v. SEPTA*, 137 Pa. Commw. 163, 585 A.2d 583 (1991). In *Williams*, the praecipe to issue a writ of summons was filed on February 17, 1988, one day before the statute of limitations ran out. On February 2, 1988, plaintiff's attorney had mailed a copy of the writ to SEPTA's claims supervisor, along with an "acceptance of service letter form," which was never returned to plaintiff's attorney. Plaintiff's attorney

reissued the writ seven times before it was finally served on SEPTA on October 25, 1988.

The Commonwealth Court affirmed the trial court's grant of summary judgment in favor of defendant SEPTA. Plaintiff's counsel argued that he complied with Pa.R.C.P. 402(b), which provides in part that a defendant *may* accept service by filing a separate document. However, Commonwealth Court observed, in its opinion, that a plaintiff must also comply with Pa.R.C.P. 400(a), which provides in relevant part that original process *shall* be served by the sheriff. Most importantly, plaintiff did not discuss his attempts at service, and did not make *any* explanation for the delays arising from the seven reissued writs, in particular plaintiff failed to explain why an entity as well-known as SEPTA could not be served easily. Since the burden was on the plaintiff to show that he made a good faith attempt at service, Commonwealth Court concluded that, based on *Lamp,* the trial court properly granted summary judgment in favor of the defendant based on the bar of the statute of limitations.

The other Commonwealth Court case is *Nagy v. Upper Yoder Township,* 652 A.2d 428 (Pa. Commw. 1994). The accident giving rise to that suit took place on February 12, 1990.

"On July 13, 1990, [plaintiff, through former counsel] served a notice of intention to commence action against a governmental unit. On February 10, 1992, [plaintiff] filed a praecipe for issuance of a writ of summons. However, the writ was forwarded directly to [plaintiff's] former counsel, instead of the normal practice of having the prothonotary deliver the writ to the sheriff for service on the defendant. Under the Cambria County local rules

of practice, a plaintiff files a writ, instructions, and payment for sheriff's service. Service of this writ was never effectuated.

"On April 8, 1992, after the statute of limitations had expired on this action, [plaintiff's] former counsel praeciped for the reissuance of the writ, which was properly served on April 15, 1992." *Id.,* 652 A.2d at 429.

Commonwealth Court held that this action was barred by the *Lamp* rule. Plaintiff argued that its timely "notice of intention to commence an action against a governmental unit" was sufficient to fulfill the *Lamp* requirements. The Commonwealth Court disagreed, saying that the statutorily mandated *notice* of intent to sue does not actually *initiate* a suit because a plaintiff may still change his mind about "instituting" the suit after the notice has been served. A "notice of intent" required to be filed was held not to be the legal equivalent of "actual" notice referred to in the Superior Court cases. Furthermore, as in *Williams,* above, the plaintiff appears not to have adduced evidence explaining what happened to the writ from mid-February 1992 until April 8, 1992 when it was reissued, instead relying on appeal only on the "notice of intent."

Based on the summaries above of the Superior Court cases decided since *Farinacci,* we can see that the Superior Court appears to be construing the *Lamp* rule more strictly in recently decided cases. For example, in *Leidich,* a 1990 case, plaintiff's counsel's admission that he did not follow the local practice of allowing the prothonotary to deliver the writ to the sheriff but that he instead picked up the writ himself was *not* fatal. By contrast, in *Ferrara,* a 1994 case, even where the plaintiff did everything required of him under the local rules, and where the defendant's insurance carrier had

actual notice of the *accident* and where there had even been a settlement offer, it was held that plaintiff had not fulfilled the *Lamp* rule. This was apparently because defendant did not have actual notice of the *suit* (even though defendant's *insurer* must have known of the *possibility* of the suit). In *Ferrara,* as well as in *Cahill,* also decided in 1994, the Superior Court and Commonwealth Court both found that unintentional conduct reflecting only minimal inadvertence by the plaintiff was enough to violate the rule. These holdings might, however, be in conflict with *Farinacci,* the most recent Supreme Court pronouncement, in which it was stated that "eight or nine days . . . delay . . . attributable to counsel's simply misplacing the file . . . is not necessarily inconsistent with a finding of good faith." *Id.* at 594-95, 511 A.2d at 759-60. In addition, *Rosenberg* (1991), *Schriver* (1994) and *Bigansky* (1995) seem to indicate that the Superior Court will only condemn a more extreme level of neglect, requiring a finding of gross negligence or reckless indifference before concluding that the conduct has descended to the level of "bad faith."

We therefore see a progression and a variation in the level of negligence or misconduct which the appellate courts would tolerate, from the pre-1976 "anything goes" (so long as the praecipe for the writ of summons was timely *filed*) to something approaching the view instant defendants would have us take, that plaintiff's "good faith" is *irrelevant* even if the defendants, as here, have actual notice of the plaintiff's claim, are expecting to receive a complaint (Murphy deposition pp. 37, 40), and have offered to settle the case, an offer which arguably was accepted by plaintiff prior to its being withdrawn on February 3, 1995 by defendant after consultation with counsel. (Murphy deposition pp. 60-70.)

## CONCLUSION

The real breakdown of the "legal machinery" in the instant case began with the prothonotary's inadvertent acceptance and retention of the document and counsel's letter of instruction, even though the filing fee sent did not include the recently added charges. Having kept the mailing, the prothonotary had the duty to act consistently with its admitted custom and follow the attorney's attached instructions. It is from this minor and understandable clerical error of a prothonotary's clerk that defendant now seeks to reap an extreme and inappropriate reward: dismissal of plaintiff's claim based on *Lamp* and its progeny. This court will not participate in such an event. Even if one were to find that plaintiff's counsel could have discovered the prothonotary's mistake sooner, it cannot be said that this arises to plaintiff's having violated *Lamp's* prohibition against "stall[ing] in its tracks the legal machinery he has just set in motion." Nor can it be said that plaintiff's counsel's discovery of the prothonotary's error was so belated as to invoke the *Rosenberg* suggestion of gross negligence or total indifference. Chaos theory (where a flutter of a butterfly's wings in the Amazon jungle can precipitate a tornado in Kansas) may explain the cumulative effect of a series of minor inadvertent actions in this case. The law, however, must seek to rescue order from chaos. It was the *prothonotary's* mistake which was the flutter that precipitated the whirlwind from which defendant seeks to reap a procedural windfall. Plaintiff cannot be said to have acted in bad faith simply because the additional flutters of fate in plaintiff's attorney's office prevented the prothonotary's initial error from being discovered more quickly. In addition, defendant had actual notice of plaintiff's claim and the impending

suit. Also, under the minority opinion in *Farinacci,* they have suffered no prejudice.

Defendants T.J. Lipton Company's and Jeff Paczan's motion for summary judgment based on the bar of the statute of limitations because of an alleged violation of the principles of *Lamp v. Heyman* must be denied.

## ORDER

And now, to-wit, August 14, 1996, it is hereby ordered that defendants T.J. Lipton Company's and Jeff Paczan's motion for summary judgment based on the bar of the statute of limitations is denied, for the reasons stated in the accompanying memorandum.