574 A.2d 604

GAF CORPORATION, Appellant,

v.

**David CATHCART and Thelma Cathcart and Keene Industrial Insulation Southern Asbestos, Johns–Manville, Raybestos–Manhattan, Celotex Corp., Owens Corning, Pittsburgh Corning, Pabco Industrial Products Division H K Porter, Eagle–Picher Industries, Inc., Armstrong World Industries, Owens–Illinois, and Fibreboard Corp., Henry Albert, et al., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1990.

Filed March 27, 1990.

Reargument Denied June 4, 1990.

Stuart J. Agins, Philadelphia, for appellant.

Robert E. Paul, Philadelphia, for Cathcart, appellees.

Before DEL SOLE, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

On March 9, 1989, this Court, by a per curiam order, granted the GAF Corporation, appellant herein, permission to appeal from the interlocutory order of the trial court, denying GAF's petition for judgment of *non pros*. The Honorable Sandra Mazer Moss, J., of the Philadelphia Court of Common Pleas, by Order dated November 21, 1988, certified that the order denying GAF's petition for judgment of *non pros* involves controlling questions of law as to which there are substantial grounds for difference of opinion. Although the trial court emphasized a single question of law in its November 21, 1988, Order, this Court granted GAF permission to appeal without limiting the appeal to one or more questions presented in GAF's petition. *See* Pa.R.A.P. 1321. Accordingly, we will now review the trial court's denial of the *non pros* petition filed by GAF on the merits.

The facts and procedural history of this matter are well known to this Court, and appear in detail in our Opinion in *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). On February 6, 1976, David and Thelma Cathcart brought suit against thirty-one defendants, including GAF, by filing a Writ of Summons. By the end of February of 1976, the Cathcarts' case was one of forty-five asbestos cases filed in the Philadelphia Court of Common Pleas by the firm of Shein and Brookman, P.A. All of these forty-five cases were subsequently assigned to the Honorable Harry Takiff for all purposes. During February of 1976, the Cathcarts petitioned to consolidate the forty-five cases for the purposes of service, discovery, and trial. This petition was denied. As the April 30, 1981, Opinion of Judge Takiff recounts, a preliminary conference regarding these cases was held on May 19, 1976. During

this conference, in which no less than twenty-two defense attorneys participated, issues concerning procedure, service of process, jurisdiction, and discovery were discussed. It was clearly recognized by the attorneys present at the preliminary conference, as well as the trial court, that many of the defense attorneys were at the conference "informally" because of the fact that their clients had never been properly served.

More conferences were held by Judge Takiff during June and July of 1976, and it was agreed that plaintiffs' counsel would file preliminary interrogatories to aid in the preparation of Complaints.[1]  These interrogatories were filed on July 29, 1976, and sought general information concerning each defendant's involvement in the asbestos industry. Throughout this time, it is undisputed that the plaintiffs' attorneys were struggling with the problem of effecting service upon the defendants for all of the forty-five cases being handled by Judge Takiff.  To this end, a petition was filed on July 13, 1976, for leave to serve by registered mail, a method of service which would have minimized the Sheriff's costs incident to the service of Writs.  At this point in time, the Cathcarts' 1976 action had not been formally served on any of the named defendants.  While the petition for leave to serve by registered mail was pending, GAF voluntarily accepted service on August 11, 1976.  The petition to serve by registered mail was subsequently denied. Three other defendants also accepted service: Owens–Corning, Janos Asbestos, and Pars Manufacturing.  GAF was also one of fifteen defendants which answered the plaintiffs' preliminary interrogatories.

During 1977, Judge Takiff entered various pre-trial orders in an attempt to streamline the discovery process for

1. The first asbestos case filed by the firm of Shein and Brookman, P.A., was *Virginia Dellamo, Admx., et al. v. Keene Corp. et al.*  As Judge Takiff explains in his Opinion of April 30, 1981: "Numerous defendants were served and/or caused appearances to be entered on their behalf.  Since it was the "lead" case, the Court and the parties accepted the use of the *Dellamo* caption in the drafting of Interrogatories, Motions, Orders, etc. which are general in nature and/or are common to a large number of cases."  Op. of Trial Court, April 30, 1981, at 9.

all of the asbestos cases instituted by Shein and Brookman, P.A. The first of these orders, dated July 21, 1977, "addressed a number of difficulties created by this massive, multi-party group of cases including, *inter alia*, the formation of committees of plaintiffs' and defendants' counsel, the problem of cross-claims between and among defendants, the need for filing a jury trial demand, and the methods by which repetitive medical examinations of the plaintiffs would be minimized and medical records exchanged." Op. of Trial Court, April 30, 1981, at 14. This July 21, 1977, Order, was entered on the *Cathcart* docket. We note that in January of 1978, one of the defendants in the Cathcart case which had accepted service of process, Pars, ruled the Cathcarts to file a complaint in the 1976 summons action, and when the Cathcarts failed to do so, Pars obtained a judgment of *non pros.*

In September of 1978, Shein and Brookman, P.A., instituted a second lawsuit, on behalf of one hundred and nineteen plaintiffs, at a new court term and number, which was filed and served upon defendants as a multi-party complaint. The Cathcarts were a part of this second lawsuit, and there is no dispute that their cause of action in the 1978 action was identical to the cause of action underlying their 1976 action commenced by a Writ of Summons. The 1978 action included thirty-one defendants, sixteen of which had been named in the 1976 action. GAF was one of these defendants. The other fifteen defendants were named for the first time. A complaint was filed in the 1976 summons action in January of 1981.

Instantly, our focus is necessarily upon the 1976 action. However, we note that in *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), we affirmed summary judgment which had been granted in the 1978 case in favor of all defendants as to Thelma Cathcart's claim for emotional distress, due to the absence of physical manifestations of disease. We also affirmed summary judgment which had been entered in the 1978 case in favor of all defendants, except GAF, Certain–Teed, and UNAR-

CO $^2$, as to David Cathcart's claims and Thelma Cathcart's consortium claims. The summary judgment granted in favor of the defendants in the 1978 action was based upon the bar of the statute of limitations.[3]

Additionally, in our decision in *Cathcart, supra,* we affirmed the entry of judgments of *non pros* entered in favor of all named defendants in the 1976 action except those defendants which had been made parties to the 1976 action by accepting service or by otherwise submitting to the jurisdiction of the court: GAF, Owens–Corning, Amatex, UNARCO, and Certain–Teed. Most of this Court's Opinion in *Cathcart* involves a discussion of the statute of limitations defense, as it applied to the 1978 action. As an initial issue, we agreed with the trial court's determination that as to those defendants which had *not* accepted service in the 1976 action or otherwise submitted to the jurisdiction of the court, these defendants had not waived their right to challenge the court's jurisdiction. The *non pros* judgments entered as to the 1976 summons action were affirmed with little discussion because, although the Cathcarts had appealed the *non pros* judgments, they failed to challenge the factual findings rendered by the trial court in support of these judgments:

> (1) that appellants [Cathcarts] had delayed unreasonably in prosecuting their case by not taking any action from the time that they initiated suit in February, 1976, until they attempted to serve copies of a complaint in January, 1981, a period of almost five years; (2) that appellants' [Cathcarts'] delay "was the result of an effort to save costs" and was "inexcusable"; and (3) that the twenty-five defendants had been prejudiced....

*Cathcart, supra* at 132–133, 471 A.2d at 498.

The order which we now review involves the trial court's refusal to enter a *non pros* judgment in the 1976 summons

**2.** Janos Asbestos was not named in the 1978 lawsuit.

**3.** In the 1978 action, the trial court had denied GAF's motion for summary judgment. GAF did not challenge this ruling in *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), which, in any event, was a nonappealable interlocutory order.

action in favor of GAF.[4] "A court properly enters a judgment of *non pros* when a party to the proceedings has shown a want of due diligence by failing to proceed with reasonable promptitude, when there has been no compelling reason for the delay, and when the delay has caused some prejudice to the adverse party." *Id.* (citation omitted). The trial court refused to enter the non pros judgment in favor of GAF based upon its finding that the Cathcarts had not delayed unreasonably in proceeding with the 1976 action with respect to GAF, as well as UNARCO, Certain-Teed, Amatex, and Owens-Corning. Although we do not approve of all of the actions undertaken by counsel for the Cathcarts in litigating the Cathcarts' causes of action against GAF, under the unique circumstances of this case, and in view of the complexity of the administration of asbestos litigation in the trial court, we affirm the denial of GAF's petition for judgment of *non pros.*

Certainly, one of the most important factors in the trial court's determination in this matter concerned GAF's acceptance of service in the 1976 action. Undoubtedly, with the acceptance of the service, GAF knew that the Cathcarts were pursuing a legal suit against GAF arising from asbestos exposure. GAF contends that the Cathcarts should be equitably estopped from asserting GAF's acceptance of service, because GAF accepted service only after counsel for the Cathcarts represented that proper service would be effected upon all defendants whether they voluntarily agreed to accept service or not. The trial court, in an Opinion filed March 12, 1982, responded to GAF's equitable estoppel argument as follows:

... statements by plaintiff's counsel were but declarations indicating plaintiff's intention to attempt to effect service in some manner upon all defendants named in the 1976 action and cannot be construed as representations

---

**4.** We recognize that in *Cathcart v. Keen Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), GAF attempted to argue that the trial court erred in refusing its motion for *non pros* judgment. This Court declined to review the issue at that time, as it was not a final order.

designed to induce reliance. To avoid the expense service would entail, plaintiff sought cooperation from the defense bar. Owens–Corning Fiberglass, Amatex, Certain-Teed [sic], Janos and Pars Manufacturing voluntarily accepted service or entered appearances at this time and GAF did likewise. GAF now regrets its cooperation but the occasion for this cooperation is not characterized by either intentional misrepresentation or fraud, according to our reading of the submitted materials, and we decline to invoke the doctrine of estoppel under these circumstances.

Op. of Trial Court, March 12, 1982, at 4.

We agree that estoppel is not properly applied under the circumstances of this case. The history of the correspondence and court discussions concerning service of process in the 1976 action reveals a continuing struggle on the part of plaintiffs' counsel to get the job done. As we have earlier noted, plaintiffs' counsel filed two motions in an effort to curb the cost of service of process and to avoid serving the defendants in the usual manner. GAF was certainly aware that plaintiffs' counsel was dragging its feet in the area of proper service of the 1976 Writ of Summons action, and GAF also knew that few of the other defendants named in the Cathcarts' 1976 suit had agreed to voluntarily accept service. During the time prior to GAF's acceptance of the service, plaintiffs' did no more than represent that cooperation from the defense bar would be appreciated in the area of service, and that the plaintiffs intended to accomplish service in some manner. GAF chose to believe that the plaintiffs would eventually effect service in a timely manner, using a valid method, in the face of obvious indecision and difficulty on the part of plaintiffs' counsel in effecting service and only general promises that eventually service would be completed. Based upon the history of the case at the time GAF accepted service of process, we find no error in the trial court's determination that the plaintiffs' representations were not "designed to induce reliance." More importantly, we note that there are two essential elements

of equitable estoppel: inducement and justifiable reliance on that inducement. *See Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983); *Cosner v. United Penn Bank*, 358 Pa.Super. 484, 517 A.2d 1337 (1986). We are convinced that, based upon plaintiffs' failure to promptly effect service in the 1976 action and the plaintiffs' motions requesting relief from the administrative and monetary burden of serving the defendants in the usual manner for the numerous cases instituted by Shein and Brookman, P.A., GAF could not have reasonably expected that no problems in the service of the remaining defendants would arise. Consequently, our starting point in evaluating the merits of GAF's non pros motion is that GAF voluntarily and validly accepted service of process in the 1976 action.[5]

[3, 4] We recognize that in the 1976 summons action, the Cathcarts failed to file a Complaint until January of 1981. If this span of time was devoid of significant activity on the part of the plaintiffs in prosecuting their causes of action against GAF, this would be a different case. However, as Judge Takiff emphasized in his Opinion of April 30, 1981, throughout 1976 and 1977, plaintiffs counsel participated in numerous conferences and meetings which necessarily involved all of the asbestos cases instituted by Shein and Brookman, P.A. In 1978, plaintiffs, represented by Shein

---

5. We note that this conclusion alone renders much of the case law cited by GAF inapplicable. The brief filed for Amici Curiae states the obvious when it reminds this Court that our decision "is limited to the facts and circumstances of the *Cathcart* case only." Brief for Amici Curiae at 20. When GAF accepted service in the 1976 action, GAF was aware of the pending lawsuit, and plaintiffs could then formulate and file a complaint at some time in the future. "If any harm is incurred by the defendant as a result of such delay [in the filing of the complaint], it results from his own failure to employ the weapon given him ... to force the plaintiff to file the Complaint." *Galbraith v. Gahagen*, 415 Pa. 500, 204 A.2d 251 (1964). Thus, the Supreme Court's decision in *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), and its progeny, have little application to this matter between GAF and the Cathcarts, as that line of cases comes into play when a writ of summons has been filed by the plaintiff who then neglects to take all of the necessary procedural steps to effectuate service of the writ upon the defendant. *See Watts v. Owens–Corning Fiberglas Corp.*, 353 Pa.Super. 267, 509 A.2d 1268 (1986); *Hoeke v. Mercy Hospital of Pittsburgh*, 254 Pa.Super. 520, 386 A.2d 71 (1978).

and Brookman, P.A., instituted a second lawsuit. In this 1978 action, the Cathcarts asserted the same cause of action which served as the basis of their 1976 summons action against GAF. We find no error in the trial court's conclusion that, in the context of considering a motion for judgment of non pros, the 1978 action instituted by the Cathcarts revealed that the Cathcarts were continuing to pursue their cause of action against GAF, and not abandoning it.[6] Following the filing of the 1978 action, extensive pre-trial pleading and discovery occurred. In September of 1980, all plaintiffs, including the Cathcarts, submitted a Petition to Consolidate the 1976 action and the 1978 action under one term and number. This petition was later withdrawn and resubmitted. On June 4, 1981, the trial court granted consolidation of the two cases as to all defendants who remained in the case including GAF.

In view of all of the foregoing, we find no error in the trial court's finding that the Cathcarts' did not show a want of due diligence or an unwillingness to proceed with their cause of action against GAF. During the years between the filing of the summons in 1976 and the filing of the complaint in 1981, the Cathcarts, along with the other plaintiffs represented by Shein and Brookman, P.A., pursued their causes of action by participating in meetings, discovery, motions, and so on. A *non pros* judgment is premised upon the equitable principle of laches. According-

**6.** We expressly disapprove of the practice followed by counsel for the Cathcarts in instituting the 1978 action, wherein the Cathcarts raised causes of action against GAF identical to the causes of action pending in the 1976 summon action, but used a new court term and number. Although we know of no rule which required the Cathcarts to file to the original writ and number, we find the failure to do so confusing and misleading to the trial court and to opposing counsel. *See Beck v. Minestrella,* 264 Pa.Super. 609, 401 A.2d 762 (1979). Our statements in this regard, however, do not affect our conclusion that the Cathcarts, from 1976 to the filing of the complaint in the 1976 summons action, were prosecuting their cause of action against GAF with reasonable promptitude so as to avoid the entry of a non pros judgment. Further, as we have noted, as to the equities of this particular case, once GAF was effectively served with the 1976 summons, GAF had the option to invoke the remedies available to a defendant who believes that too much time has gone by without the filing of a complaint. *See* Pa.R.C.P. 1037(a).

ly, we find no error in the court's determination that despite the complex and at times "inexplicable" procedural steps undertaken by counsel for the Cathcarts, the equities fell on the side of the Cathcarts in view of the fact that GAF had been validly served in the 1976 action and, thereafter, was fully aware of the efforts of Cathcarts' counsel, Shein and Brookman, P.C., to successfully pursue this matter, including the refiling of the same causes of action against GAF in the 1978 lawsuit.

We affirm the order denying GAF's petition for judgment of *non pros.*

Order affirmed.

DEL SOLE, J., files a dissenting statement.

DEL SOLE, Judge, dissenting.

While I believe that my colleagues in the Majority have carefully and correctly analyzed the factual situation surrounding this case, I must dissent from the decision to affirm the trial court's order. Rather, I would dismiss this appeal as having been improvidently granted. I am disturbed by the fact that this court is *now* being asked to review opinions and orders that were entered in 1981. The entire thrust of the Appellant's claim deals with the determination of Judge Takiff entered on April 30, 1981 which denied GAF's motion for entry of judgment of non pros. Through the legerdemain of having a different common pleas court judge, seven years later, certify the issues for possible appellate review on the theory that there are "controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from this order may materially advance the ultimate determination of this matter and forty-six other cases" (Judge Moss' Order of November 21, 1988) strains credibility.

The issues being raised by GAF in this case, at this time, were decided by the trial court adversely to GAF in 1981. The case should have proceeded to trial. There is no excuse

for this matter being delayed this long and, further, I believe that it was inappropriate for the trial court in 1988 to certify as a controlling question an issue that was decided in 1981. How one can argue that an immediate appeal seven years later of such a matter can advance the ultimate disposition of the case is beyond me. Along the same lines I believe that our court erred in granting permission to appeal this case and as such, I believe we should dismiss the appeal as having been improvidently granted.

At oral argument counsel argued that dismissing the appeal would only delay the possible recovery of the injured parties who have waited so long. The wait in this case is not because the courts did not decide the issue. It is because the parties did not accept the decision that was made in 1981, proceed to trial, and then, if an adverse judgment had been entered, file an appeal and raise the issue. I would dismiss the appeal as having been improvidently granted.