J-A32025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ROGER RUSH, LAWRENCE RUSH AND CLARA CANNON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MILLICENT RUSH AND LEORA LYTLE | |
| APPEAL OF: MILLICENT RUSH AND LEORA LYTLE, BY SUBSTITUTED PARTY, DEBORAH GAIL SMITH | |
| | No. 165 WDA 2015 |

Appeal from the Order Entered December 30, 2014
In the Court of Common Pleas of Somerset County
Civil Division at No(s): 367 Civil 1995

BEFORE: SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 30, 2015**

Millicent Rush ("Millicent") and Leora Lytle ("Leora"), by substituted party, Deborah Gail Smith ("Smith"), appeal the order entered December 30, 2014, in the Somerset County Court of Common Pleas, dismissing their exceptions, and denying their motion to strike a Partition Master's Report. In the Report, the Master (1) determined that a 175-acre parcel, deeded to Millicent and Leora, along with their siblings Roger Rush ("Roger"), Lawrence Rush ("Lawrence") and Clara Cannon ("Clara"), (collectively "the Plaintiffs"), following the death of their mother, Sarah Jane Rush, was not capable of division into purparts without prejudice to the whole property, (2) rejected Millicent and Leora's proposal that a specific 43.75-acre parcel be carved out

and deeded to Leora, and (3) recommended the property be offered for private sale among the parties. On appeal, Millicent and Leora argue the trial court erred and abused its discretion in adopting the Master's Report because of the extreme delay between the Master's hearings, in 1997 and 1999 respectively, and the issuance of the Report in 2011. For the reasons that follow, we affirm.[1]

The parties are siblings, the children of William H. Rush and Sarah Jane Rush. After William died in 1964, ownership of the subject property, a 200.09-acre tract in Somerset County, was transferred to Sarah. Upon her death, on April 4, 1993, the property passed to their children, the parties herein, as tenants-in-common. On June 21, 1995, the Plaintiffs, Roger, Lawrence and Clara, initiated a partition action. Thereafter, the parties agreed to transfer a 25-acre parcel of the property, which included a farmhouse and barn, to Millicent as satisfaction of her interest in the subject property. On July 5, 1996, the trial court entered an order, based upon the agreement of the parties. *See* Order, 7/5/1996. The order further provided the remaining 175 acres would be subject to partition "among the remaining parties in proportion to their respective interests," that is, each receiving a

---

[1] We note the record reveals that Lawrence died in June of 2002, but prior to his death, transferred his interest in the property to Roger. Millicent later died in March of 2010, and Leora died in February of 2011. Millicent's daughter, Deborah Gail Smith, is the substituted party for both of their interests.

one-fourth share. *Id.* A Master was appointed in August of 1996. The trial court summarized the issue before the Master as follows:

> The principal controversy presented to the Master [was] based on the desire of the Plaintiffs to have the 175 acre residue sold as a unit to include land and timber and thereafter to split the cash proceeds versus [Leora and Millicent] who desire to have the 175 acre residue divided into 43.75 acre tracts for distribution to each of the remaining four cotenants. At least in the alternative, [] Leora [] desires that a 43.75 acre parcel along the east side of the Millicent Rush tract be conveyed to her in kind and the balance of the property be divided among the remaining three cotenants in any manner they desire.

Trial Court Memorandum Opinion, 1/2/2015, at 4.

After the Master took no action for more than a year, Millicent and Leora filed a motion seeking to vacate the appointment and proceed to a hearing before the trial court. On October 8, 1997, the trial court vacated the original Master's appointment, and substituted William T. Cline, Esq., to serve as Partition Master. Two Master's hearings were conducted on November 24, 1997, and July 22, 1999, during which the parties each presented expert testimony from a real estate appraiser and a professional forester.

No subsequent action was taken for four years. In July of 2003, the Master sent a letter to the parties setting a briefing schedule. The parties submitted timely briefs in October of 2003. With no explanation provided in the record, the case then laid dormant again until June of 2011, when the trial court scheduled a status conference. Before the date of the conference, however, on July 6, 2011, the Master filed a Preliminary Report. Relevant to

this appeal, the Master found the following: (1) Millicent's acceptance of the 25-acre parcel "completely satisfied her interest in this property and … she has no claim on any of the balance of the property or the timber on [the] residual property[;]" (2) the property "is not capable of division into pur parts (sic) without prejudice to or spoiling of the whole[;]" (3) the Master "does not have the authority to divide out a [43.75-acre] tract to be given to Leora[;]" and (4) "the best course would be to offer the property to a private bid sale among the parties[.]"  Master's Preliminary Report, 7/6/2011, at 13, 15, 17.

On July 11, 2011, Millicent and Leora filed both a motion to strike the Master's report, due to "the extraordinary passage of time,"[2] and exceptions to the Master's report, challenging the Master's legal and factual conclusions. On May 16, 2012, the trial court conducted an evidentiary hearing. Thereafter, on December 30, 2014, the trial court filed a memorandum opinion and order denying Millicent and Leora's motion to strike, and dismissing their exceptions to the Master's report.  The order also scheduled a settlement conference in January of 2015, "limited to either the establishment of a beginning private sale bid price or upon the direction of one or more appraisals to be commissioned by the parties."  Order,

_____

[2] Defendants' Motion to Strike Master's Preliminary Report, 7/11/2011, at ¶ 3.

12/30/2014. The conference was conducted on January 21, 2015. The same day, Millicent and Leora filed an appeal from the December 30, 2014, Order.[3]

Before we address the substantive issues raised on appeal, we must first determine whether the order before us is appealable. **See In re Estate of Moskowitz**, 115 A.3d 372, 388 (Pa. Super. 2015) ("The appealability of an order directly implicates the jurisdiction of the court asked to review the order.") (quotation omitted). The Plaintiffs filed a motion to quash this appeal, which this Court preliminarily denied, without prejudice, to their right to raise the issue before the merits panel. **See** Order, 6/19/2015. The claim is now ripe for our review.

The Plaintiffs contend the trial court's December 30, 2014, order was not a final order under Pa.R.A.P. 341. They argue the court "went out of its way to structure" the order "so it was not final in nature[,]" scheduling a settlement conference for the following month. Plaintiffs' Brief at 10 (emphasis omitted). Furthermore, they emphasize that, after the settlement conference, the trial court entered an order, based on an agreement of the

---

[3] On January 23, 2015, the trial court ordered Millicent and Leora to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Millicent and Leora complied with the court's directive, and filed a concise statement on February 12, 2015.

parties, establishing a timetable for the updated valuation of the property, and expressly stating:

> The Court AFFIRMS that the Order of December 30, 2014 determining that the property should be sold at private sale and that the property was not divisible into purparts is NOT A FINAL ORDER, and accordingly is not subject of appeal at this time.

Order, 1/21/2015. Therefore, the Plaintiffs assert Millicent and Leora are now "estopped from claiming the December 30, 2014 Order is a final order from which an appeal could be taken." Plaintiffs' Brief at 12. Moreover, they claim, "[w]here more remains to be done in preparing for a partition sale of property, an appeal from an earlier determination involving exceptions to a master's report is premature and should be dismissed or quashed." *Id.*

In response to the motion to quash,[4] Millicent and Leora relied on this Court's decision in **Bernstein v. Sherman**, 902 A.2d 1276 (Pa. Super. 2006), in which the appellant filed an appeal from a decision granting exceptions to a partition master's recommendation, and providing for a private sale of the property. *Id.* at 1277. While not directly addressing the appealability of the order, the **Bernstein** Court, nevertheless, considered the substantive issue on appeal.

_____

[4] Millicent and Leora did not address the appealability of the December 30, 2014, order in their brief before this Court.

In its Pa.R.A.P. 1925(a) opinion, the trial court acknowledged the finality issue, noting that it had "attempted to avoid rendering a final appealable order until after valuations were established[.]" Pa. R.A.P. 1925 Opinion, 4/10/2015, at 2. Nevertheless, the court declined "to comment on whether the within appeal is from a final order or is an interlocutory appeal lacking approval from the court." *Id.*

While we recognize the valuation of the property is not complete, we find the December 30, 2014, order constituted a final order for purposes of resolving the primary conflict between the parties, that is, the division of the property. Indeed, the trial court's order decisively stated: "[F]or the reasons set forth in the foregoing Memorandum Opinion [Millicent and Leora's] Exceptions are DISMISSED and the Motion to Strike Partition Master's Preliminary Report is DENIED." Order, 12/30/2014. In rejecting Millicent and Leora's exceptions to the Master's report, the trial court conclusively determined that the 175-acre parcel was incapable of division into purparts without prejudice to the whole. With regard to the outstanding issue of an updated valuation, the order directed the parties to appear for a settlement conference limited "to either the establishment of a beginning private sale bid price or upon the direction of one or more appraisals to be commissioned by the parties." *Id.* Those remaining issues regarding valuation were clearly ancillary to the main claim.

We agree that this Court's decision in *Bernstein* supports our ruling. Although the *Bernstein* Court did not specifically address the appealability

- 7 -

of the order in question, the procedural posture of that case is similar to the case *sub judice*.

In **Bernstein**, the parties sought partition of eight parcels of real estate they owned as tenants-in-common. **Bernstein**, **supra**, 902 A.2d at 1277. The master recommended a partition plan, whereby each party would receive four parcels, and provided a setoff to the party receiving the lower-valued properties. **Id.** The party receiving the higher-valued properties filed exceptions, "asserting his right to a private sale of the properties between the parties." **Id.** The trial court, thereafter, entered the order on appeal, which granted the exceptions, and provided for a private sale of the properties.

Here, the order on appeal denied Millicent and Leora's exceptions to the Master's Report, but, like the order in **Bernstein**, also provided for a private sale of the property to be conducted sometime in the future. Significantly, the trial court's December 30, 2014, order conclusively determined that the 175-acre parcel was not capable of division without prejudice. As such, the valuation of the property, and its subsequent sale, are ancillary matters.[5]

---

[5] In support of their motion to quash, the Plaintiffs cite only an unpublished decision of this Court, **Forkal v. Forkal**, 11 A.3d 1010 [1939 MDA 2009] (Pa. Super. 2010) (unpublished memorandum), for the proposition that, "[w]here more remains to be done in preparing for a partition sale of property, an appeal from an earlier determination involving exceptions to a master's report is premature and should be quashed." Plaintiffs' Brief at 12. *(Footnote Continued Next Page)*

Moreover, we do not agree that Millicent and Leora are estopped from claiming the trial court's December 30, 2014, order is appealable. While it does appear from the text of the court's January 21, 2015, order that Millicent and Leora may have, at least preliminarily, agreed the December 2014 order was not a final order,[6] they are not estopped from taking a contrary view in this appeal. "[T]here are two essential elements of equitable estoppel: inducement and justifiable reliance on that inducement." *GAF Corp. v. Cathcart*, 574 A.2d 604, 608 (Pa. Super. 1990), *appeal denied*, 589 A.2d 687 (Pa. 1990), and 589 A.2d 691 (Pa. 1990). Here, the Plaintiffs make no claim they relied upon the agreement to their detriment. Accordingly, we find the appeal is properly before us and may now address the substantive claims.[7]

Our review of a ruling in a partition action is well-settled:

_____

*(Footnote Continued)* _____

However, a review of that decision reveals that the order in question not only denied the appellant's exceptions to the master's report, it also directed the master to employ an appraiser and, thereafter, issue an amended report "including specific findings regarding the value and **division** of the property." *Forkal*, *supra*, unpublished memorandum at 2. Therefore, in *Forkal*, unlike in the present case, the primary controversy between the parties, *i.e.*, how the shared real estate would be divided, was not determined by the order on appeal.

[6] We note that the certified record does not include any transcript from the January 21, 2015, hearing.

[7] In making this determination, we are also cognizant of the fact that this partition action has been languishing in Somerset County for many years, apparently through no fault of the parties.

> The scope of appellate review of a decree in equity is particularly limited and such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The test is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusion can be reasonably drawn from the evidence. Where a reading of the record reasonably can be said to reflect the conclusions reached by the lower court sitting in equity, we cannot substitute our judgment for that of the lower court. The findings of the chancellor will not be reversed unless it appears that he clearly abused his discretion or committed an error of law.

*Lombardo v. DeMarco,* 504 A.2d 1256, 1258 (Pa. Super. 1985) (internal citations omitted).

Partition actions are governed by the Pennsylvania Rules of Civil Procedure. *See* Pa.R.C.P. 1551-1574. After the trial court grants partition of jointly-owned property, it may appoint a master to determine whether the property is capable of division without prejudice to or spoiling the whole. *See* Pa.R.C.P. 1558(b), 1559. If the property is capable of division without spoiling the whole, it is then divided "into as many purparts as there are parties entitled thereto[.]" Pa.R.C.P. 1560(a). If the property is not capable of proportional division, it is then "awarded equitably among the parties with appropriate provisions for owelty."[8] Pa.R.C.P. 1562. However, if the property is not capable of division into purparts without prejudice to or

---

[8] "Owelty" is defined as "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property." *Bernstein*, *supra*, 902 A.2d at 1278 n.2.

spoiling the whole, Rule 1563 directs the property "shall be offered for private sale confined to the parties." Pa.R.C.P. 1563.

Here, the Master determined that the 175-acre parcel was not capable of division **without prejudice** to the whole. Relying on his "personal view of the property," as well as the testimony of the parties' experts, the Master concluded the "topography" of the land parcel "is so vaired that a division into pur parts (sic) would not result in parcels of equal value." Master's Preliminary Report, 7/6/2011, at 15, 16. In doing so, the Master relied on the following factual determinations: (1) the land was only accessible by a dirt lane which was in poor condition; (2) the only level acreage on the land was the 25-acre parcel given to Millicent; (3) the size and species of the trees were not uniform through the acreage; and (4) the topography of the land provided for "no other commercial use … other than timber production." *Id.* at 16. The trial court accepted these findings when it dismissed Millicent and Leora's exceptions to the Master's report.

On appeal, Millicent and Leora contend the trial court abused its discretion in accepting the Master's report after a 12-year delay between the date of the final partition hearing and the filing of the Report. Relying on the doctrine of laches, they contend that the "[e]xtreme delay in the Master filing his [r]eport should have compelled the Trial Court to disregard the Master's Recommendations." Millicent and Leora's Brief at 18. Specifically, Millicent and Leora assert:

The only equitable remedy for such a prolonged delay was to allot [Leora] a forty-three (43) acre purpart as she requested. It is well-established that actions in equity may apply the doctrine of laches where there is inexcusable delay or failure to exercise due diligence. In this case, the appointed Partition Master failed to perform his duties with due diligence.

*Id.* Millicent and Leora further contend they suffered prejudice as a result of the delay, in that the "costly timber and real estate appraisals and expert testimony on those appraisals [are now] outdated and unreliable." *Id.* at 19. Consequently, they allege the substituted party, Smith, will now "be faced with the financial burden of essentially re-trying the Partition Action fifteen (15) years after the case was initiated." *Id.* at 20.

In its Rule 1925(a) opinion, the trial court rejected Millicent and Leora's claim that "the passage of time alone renders the report and recommendation totally invalid." Pa.R.A.P. 1925 Opinion, 4/10/2015, at 2. While agreeing the timber and real estate appraisals were outdated, the court, nevertheless, concluded the Master correctly determined that the property was not capable of division into purparts without prejudice to the whole. *Id.* at 2, 4. In doing so, the court relied on the Master's factual findings, which were "unchanged" in the 12 years since the last partition hearing. *Id.* at 4. Specifically, the court noted:

The subject property is irregularly shaped, has poor natural or man-made access, has areas of uneven and extreme sloped terrain, lacks a homogeneous timber strain, and enjoys as its only primary use hunting and/or timbering. … [T]he only prime acreage consisted of the family homestead dwelling house and outbuildings situate[d] in a meadowland which was the only tillable area on the 200 acre parcel. This prime acreage was conveyed to Millicent [] by agreement of the parties leaving only

the rugged timberland for division among the four remaining litigants. Even though a surveyor could lay out lines which depicted 44 acre tracts for the remainders, those tracts would be unequal in value due to the very nature of timber, the topography, and road access.

***Id.***

We find no abuse of discretion on the part of the trial court. Although Millicent and Leora's experts opined the remaining 175 acres would not be spoiled if Leora received her requested 43-acre parcel, the Master was free to reject that testimony. ***See Werner v. Werner***, 573 A.2d 1119, 1121 (Pa. Super. 1990) ("Absent an abuse of discretion or an error of law, we are bound to accept the findings of the trial court or master, particularly where the findings are largely dependent upon the credibility of the witnesses"), *appeal denied*, 593 A.2d 843 (Pa. 1991). Indeed, Millicent and Leora's real estate appraiser admitted he did not view the entire 200-acre property, but concentrated only on the proposed 43-acre parcel Leora wished to obtain. N.T., 7/22/1999, at 16-17. Here, the trial court concluded that, due to the varying conditions of the property, the parties would be prejudiced if the acreage, or even part of the acreage, was divided into purparts. ***See*** Pa.R.A.P. 1925 Opinion, 4/10/2015, at 4. We find the court's conclusion is supported by the record. Furthermore, we agree with the trial court's finding that the passage of time, alone, did not compel the wholesale rejection of the Master's report. ***See id.*** at 2. Although the valuation of the land and timber may have changed over the 12 years since the last hearing, the topography of the land did not.

Moreover, Millicent and Leora's reliance on the doctrine of laches is misplaced.

> The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that "those who sleep on their rights must awaken to the consequence that they have disappeared." In order to apply the doctrine to bar prosecution of a stale claim, the following elements must be demonstrated: (1) a delay arising from [plaintiff's] failure to exercise due diligence; and (2) prejudice to the [defendants] resulting from the delay.

**Kern v. Kern**, 892 A.2d 1, 9 (Pa. Super. 2005) (internal citations omitted), *appeal denied*, 903 A.2d 1234 (Pa. 2006). Here, there is no support in the record for a finding that the delay in the filing of the Master's report was attributable to a lack of "due diligence" on the part of the Plaintiffs. **Id.** Therefore, the equitable remedy of laches is not applicable under the facts of this case.

Lastly, we note the trial court concluded that even if the property was capable of division without prejudice to the whole, the Plaintiffs, as majority owners, had the right to reject the division of the property into purparts and compel a sale. **See** Pa.R.A.P. 1925 Opinion, 4/10/2015, at 4.

Pennsylvania Rule of Civil Procedure 1563(b) provides, in relevant part:

> Parties defendant owning a majority in value of the property may object in writing to any sale, requesting that the property be awarded to them at its valuation fixed by the court and that their interests in the same remain undivided.

Pa.R.C.P. No. 1563(b). Although Rule 1563(b) speaks to the majority opposing a sale, the trial court interpreted the rule as providing majority

- 14 -

owners "the absolute right to reject a division of the property into purparts with owelty for equalization." Pa.R.A.P. 1925 Opinion, 4/10/2015, at 5. **See also** 5 Goodrich Amram 2d § 1563(b):3 ("The co-tenants owning a majority in value of the property have the right, not only to block a private sale of the property, but to compel a private sale of the property confined to the parties even when a minority interest attempts to prevent it."). Further, the court observed, "The passage of time did not change the fact that the [P]laintiffs were still the majority owners." Pa.R.A.P. 1925 Opinion, 4/10/2015, at 5. Again, we detect no basis to disagree with the sound logic of the trial court.

Accordingly, because we find the trial court did not err or abuse its discretion in dismissing Millicent and Leora's exceptions and denying their motion to strike the Master's report, we affirm the order on appeal.

Order affirmed. Motion to quash appeal denied.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/2015